UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LARRY BOGGS, and
DENISE BOGGS,

    Plaintiffs,                                    Case No.:

        v.                                      **COMPLAINT**

THE HOME DEPOT, INC.,
HOME DEPOT U.S.A., INC.,
THE HOME DEPOT FOUNDATION & HOMER FUND, and
JOHN/JANE DOES #1-10,

    Defendants.

---

Plaintiffs, Larry Boggs and Denise Boggs (collectively, "Plaintiffs" or "the Boggs"), by and through their undersigned attorney, file this Complaint against Defendants, The Home Depot Inc. and Home Depot U.S.A., Inc., The Home Depot Foundation & Homer Fund ("Home Depot Foundation"), and John/Jane Does #1-10, and states as follows:

## INTRODUCTION

1. This is a civil rights, common law, breach of contract and tort action in which Plaintiffs seek relief for the violation of their rights secured by the laws of the State of New York; New York State Constitution; 42 U.S.C. §§ 1981, 1982; the Fourteenth Amendment to the United States Constitution; the Americans with Disabilities Act, and the New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL").

2. Plaintiffs' claims arise from the Defendants' purposeful discrimination, and denial of services and property to the Plaintiffs based on Plaintiffs' race and status as disabled veterans, in

breach of a duly executed contract. Plaintiffs seek compensatory and punitive damages, declaratory relief, an award of costs and attorney's fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this controversy pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, for Plaintiff's claims arising under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

5. Defendants are registered to do business in New York State and have been doing business in New York State, including the Southern District of New York. Defendants The Home Depot Inc. and Home Depot U.S.A., Inc. maintain over 100 retail store fronts in New York State and have several stores in the Southern District of New York. Defendant The Home Depot Foundation & Homer Fund also conducts business in New York, and in the Southern District by providing grants and providing services and goods through its Home Depot Stores. Defendants are subject to personal jurisdiction in this District. A substantial part of the acts and omissions giving rise to Plaintiffs' claims have occurred in the Southern District of New York.

## PARTIES

6. Plaintiff Larry Boggs, for all relevant time periods, was a resident of Sullivan County, New York.

7. Plaintiff Larry Boggs is an African-American disabled Veteran, with injuries to his brain, and back, and who suffers from post-traumatic stress disorder

8. Plaintiff Denise Boggs, for all relevant time periods, was a resident of Sullivan County, New York.

9. Plaintiff Denise Boggs is also an African-American disabled Veteran, with her left leg amputated below the knee, as a result of which she requires a wheelchair.

10. Defendant The Home Depot, Inc. is an American for-profit corporation organized under the laws of Delaware, with a principal executive office at 2455 PACES FERRY ROAD, N.W., ATLANTA, GEORGIA 30339.

11. Defendant Home Depot U.S.A., Inc. is an American for-profit corporation organized under the laws of Delaware, with a principal executive office at 2455 PACES FERRY ROAD, N.W., ATLANTA, GEORGIA 30339.

12. Defendant Home Depot U.S.A., Inc. is registered to do business in New York State and a subsidiary of Defendant The Home Depot, Inc.

13. Defendant The Home Depot Foundation & Homer Fund is an American non-profit corporation organized under the laws of Georgia, with a principal executive office at 2455 PACES FERRY ROAD NO. C-17, ATLANTA, GEORGIA 30339.

14. Defendant JOHN/JANE DOES #1-10 are individual employees of Defendant Home Depot Foundation and Defendant Home Depot U.S.A., Inc. whose names are not yet known.

15. Defendants Home Depot U.S.A., Inc. and Defendant Home Depot, Inc. own and operate retail stores (hereafter "Home Depot Stores"), which are places of public accommodations including the Home Depot Store located at 68 Thompson Square, Monticello, NY 12701 ("Home Depot Store") which provided the employees who worked on the Boggs home, and who provided the supplies which were to be installed in the Boggs home pursuant to the Contract. There are currently over 2,200 Home Depot Stores in the United States, including over 100 locations in New

York State. These stores provide to the public important goods, such as appliances, tools, and home improvement products.

## **FACTS**

16. Plaintiffs Larry Boggs and Denise Boggs are a married African American couple living in a single-family 3-bedroom home in the Town of Thompson, New York.

17. Larry Boggs entered the U.S. armed forces in 1987 and was placed in the Navy as a "gunners' mate" on battleship Wisconsin.

18. Mr. Boggs was immediately commissioned and sent to Iraq to serve in Operation Desert Storm where he was stationed and fought until the completion of the War in 1990, despite one day being thrown 5 decks down the ship's steel floor, which was approximately 100 feet in length.

19. Mr. Boggs sustained significant brain injuries, broken bones, and suffered post-traumatic stress syndrome.

20. Plaintiff Larry Boggs continued his service in the Navy for total of 8 years, receiving an honorable discharge at the end of his service.

21. Mr. Boggs remains handicapped and disabled to date.

22. Plaintiff Denise Boggs entered the U.S. armed services joining the army in 1982 and served to 1985.

23. Ms. Boggs was stationed at the U.S. military base in South Korea.

24. Ms. Boggs served in Army national guard for 11 years after she completed her service in the army. She received an honorable discharge at the end of her service.

25. Ms. Boggs is a left leg amputee and remains handicapped, disabled, and wheel-chair dependent to-date.

26. In or around the fall of 2016 the Boggs' began looking for assistance with making improvements to their home to make it more accessible to Mrs. Boggs who was unable to access many areas of the home, including the bathrooms, with her wheelchair.

27. The Boggs worked with Action Towards Independence Inc. ("ATI") who was able to secure a grant for the Boggs from Defendant Home Depot Foundation.

28. On October 16, 2017, Defendant Home Depot Foundation entered into a contract ("Contract") to perform certain construction improvements to Plaintiffs' home which included making the bathrooms and other parts of the home ADA complaint and handicap accessible for Ms. Boggs who is disabled, and wheelchair dependent. *See* EXHIBIT A, Contract.

29. Defendant Home Depot, Inc. and Defendant Home Depot U.S.A., Inc were party to the Contract as they provided the services and materials in the Contract through their Home Depot Store and provided the employees and managers who worked on the home improvements pursuant to the Contract.

30. According to the terms of the contract, Defendants agreed to perform the Contract to completion by April 29, 2018. *See* Contract, para. 2.

31. In or around April of 2018, on a day that Defendant John/Jane Does #1-10 were working on the Boggs home, they informed the Boggs that after that day Defendant John/Jane Does #1-10 would not be returning for a while because the Hasidic Jewish residents (who are of Caucasian decent) were returning to town for the summer, and based on the demands of work from the Hasidic Jewish community residents, the Defendants would not be able to finish the Boggs' work until later. John/Jane Does #1-10 said they would return as soon as they were able, and effectively stopped work on the Boggs' home.

32. At this time, the Defendants had not completed much of the ADA improvements or any of the work, as set-forth in the Contract.

33. Defendants failed to provide all the building supplies and materials that were to be installed in the Boggs home pursuant to the Contract.

34. Upon information and belief, John/Jane Does #1-10 used a portion of the grant monies that were to be used for the purchase of building materials and improvements on the home to purchase tools which were not part of the Contract and which the Boggs do not have possession of to-date.

35. Defendants failed to obtain the proper permits from the Town of Thompson before starting the improvements on the Boggs' home.

36. Much of the work that Defendants performed on the home was faulty and in violation of local building code, including a deck built in violation of building codes, and bathroom wiring that was installed incorrectly creating a very serious fire hazard.

37. The Defendants left the Boggs home in complete dereliction.

38. Between April and August of 2018, the Boggs made multiple phone calls to the Defendants and visited the Home Depot Store where Defendant John/Jane Does #1-10 were employed, to see when Defendants would be returning to the home to complete the repairs.

39. Defendants continued to communicate that they were still too busy with the demands from the Hasidic Jewish summer residents but would soon return.

40. In or around the middle to the end of August of 2018, Plaintiffs visited the Home Depot store in an attempt to resolve this matter. Defendant John/Jane Does #1-10, informed the Boggs that Home Depot would no longer be performing the work, and that if the Plaintiffs wanted the work done, they could do it themselves. The Defendant John/Jane Does #1-10 proceeded to hand Ms. Boggs a can of paint, a paint brush, and rollers as she sat in her wheelchair.

41. On or about October 30, 2019, the Town of Thompson began to send letters to the Boggs informing the Boggs that their incomplete home improvements were violating local building codes and were done without obtaining proper permits.

42. The letter from the Town of Thompson required the Boggs to remedy the faulty conditions by December 11, 2019.

43. The letter further stated that the Boggs would be charged $250.00 per day until the violations were remedied, and that if the Boggs did not remedy the violations by the given date, they could face imprisonment.

44. The Boggs were very afraid of what the Town of Thompson would do if they did not remedy the violations caused by the Defendants. As they are disabled wounded veterans, the home is their most important possession, and they were traumatized at the prospect of being imprisoned for the Defendants' offenses.

45. The Boggs reached out to the Defendants directly and through ATI numerous times to attempt to get them to fix the problems with their home. The Boggs sent the Defendant's copies of the letters from the Town of Thompson which had threatened fines and imprisonment.

46. ATI reached out to the Defendants to inform them of these problems, in an attempt to get the Defendants to remedy the violations and complete the improvements.

47. Despite the Boggs continued pleas for assistance, and being on notice of the threats that the Boggs were facing from the Town of Thompson, the Defendants refused to remedy the violations and to complete the ADA improvements and other work to the Boggs home as set forth in the Contract. The Defendants continue to deprive the Boggs of the services and goods due to the Boggs per the Contract to-date.

48. Defendants' business is a place of public accommodation as defined by the ADA and NYSHRL.

49. Defendants' discriminatory actions perpetrated against the Boggs were based on the fact that the Boggs are not white and not part of the Hasidic Jewish community and are in fact disabled Black African American veterans. It was on the basis of the Boggs' race and disabilities that the Defendants denied Plaintiffs full and equal access to and enjoyment of the performance of the Contract, the Defendants' services, and the building materials and goods that were to be furnished and installed on their home.

50. As a result of Defendant's actions, Plaintiffs have suffered significant mental and emotional harm, as well as the harm of not having the benefit of the ADA improvements, and building supplies that were contracted to be installed on their home.

51. Plaintiffs retained the Law Office of William Igbokwe to represent them in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE AMERICANS WITH DISABILITY ACT

52. Plaintiffs reallege all paragraphs above as if fully set forth herein.

53. Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12182(a), provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Title III also prohibits an entity from "[u]tilizing standards or criteria

or methods of administration that have the effect of discriminating on the basis of disability." 42 U.S.C. § 12181(b)(2)(D)(I).

54. Home Depot Stores located in New York State and throughout the United States are sales establishments and public accommodations within the definition of 42 U.S.C. § 12181(7)(E). The goods and services promised in the Contract are a goods and services of the Defendants as provided through their Home Depot Stores.

55. Defendants are subject to Title III of the ADA through the Home Depot Store.

56. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I) it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

57. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

58. The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 et seq., and the regulations promulgated thereunder. Plaintiffs have been denied full and equal access to services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled patrons.

59. Defendants have failed to take any prompt and equitable steps to remedy their discriminatory conduct. This violation is ongoing.

60. As such, Defendants discriminate, and will continue in the future to discriminate against Plaintiffs on the basis of disability in the full and equal enjoyment of the goods, services, facilities,

privileges, advantages, accommodations and/or opportunities of Home Depot Stores in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 et seq. and/or its implementing regulations.

61. Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiffs will continue to suffer irreparable harm.

62. The actions of Defendants were and are in violation of the ADA and therefore Plaintiffs invokes their statutory right to injunctive relief to remedy the discrimination.

63. Plaintiff is also entitled to reasonable attorneys' fees and costs.

64. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiffs are entitled to judgment as set forth below.

## COUNT II

## BREACH OF CONTRACT

65. Plaintiffs reallege all paragraphs above as if fully set forth herein.

66. As set forth above, Defendants agreed to perform the work specified in the Contract.

67. Defendants have failed and purposefully refused to perform under the Contract.

68. Defendants have breached the Contract without cause or justification.

69. As a result of the foregoing, Plaintiffs are entitled to compensatory damages resulting from Defendants' breach of contract.

## COUNT III

## VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

70. Plaintiffs reallege all paragraphs above as if fully set forth herein.

71. The New York State Human Rights Law ("NYSHRL") prohibits a place of public accommodation from, on the basis of race or disability, discriminating by choosing to "refuse,

withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof".

72. New York Executive Law § 292(9) defines places of public accommodation to which § 296(2)(a) applies to include "retail stores and establishments" such as the Defendants Home Depot Stores.

73. Defendants withheld services from Plaintiffs, as set forth above, due to Plaintiffs' race and disabilities. This violation is ongoing.

74. Defendants' conduct was intentional, malicious and in reckless disregard of Plaintiffs' protected rights under the New York Executive Law § 296.

75. Defendants were put on notice by the Plaintiffs of the violations, yet Defendants knowingly permitted its agents and employees to continue implementing discriminatory policies against the Plaintiffs based on race and their disabilities.

76. As a result of the Defendants' unlawful discriminatory practices, Plaintiffs sustained injury, including economic damages and past and future emotional distress.

77. Due to Defendants' violations under the New York State Human Rights Law, Plaintiffs are entitled to recover from Defendants: (1) compensatory damages, (2) punitive damages, and (3) attorneys' fees and costs.

## COUNT IV

## VIOLATION OF 42 U.S.C § 1981

78. Plaintiffs reallege all paragraphs above as if fully set forth herein.

79. Pursuant to 42 U.S.C. § 1981 it provides that "[all] persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts…as enjoyed by white citizens" 42 U.S.C. § 1981(a). The 1991 act added a new

subsection to § 1981 which expansively defined protected contract rights to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

80. Plaintiff and Defendants entered into a duly executed Contract for goods and services.

81. The Defendants, its agents, and employees purposefully deprived the Plaintiffs of its services and products because the Plaintiffs are not white Hasidic Jewish peoples as set forth above. As a result of Defendants' unlawful discriminatory practices, the Plaintiffs' home was left in serious dereliction despite having a duly executed contract for goods and services.

82. Defendants were put on notice by the Plaintiffs of the violations, yet Defendants knowingly permitted its agents and employees to continue to deprive the Plaintiffs of contracted goods and services based on Plaintiffs' race.

83. This violation is ongoing.

84. As a result of the Defendants unlawful conduct, Plaintiffs have suffered harm.

85. Pursuant to 42 U.S.C. § 1981 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiffs are entitled to compensatory damages and punitive damages.

## COUNT V

## VIOLATION OF 42 U.S.C § 1982

86. Plaintiffs reallege all paragraphs above as if fully set forth herein.

87. 42 U.S.C. § 1982 provides that all citizens of the United States shall have the same right, in every State and Territory as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

88. Plaintiff and Defendants entered into a duly executed Contract for goods and services.

89. The Defendants, its agents, and employees purposefully deprived the Plaintiffs of its services and products because the Plaintiffs were not white Hasidic Jewish peoples as set forth above. As a result of Defendants' unlawful discriminatory practices, the Plaintiffs' home was left in serious dereliction despite having a duly executed contract for goods and services.

90. Defendants were put on notice by the Plaintiffs of the violations, yet Defendants knowingly permitted its agents and employees to continue to deprive the Plaintiffs of contracted goods and services based on Plaintiffs' race.

91. This violation is ongoing.

92. As a result of the Defendants unlawful conduct, Plaintiffs have suffered harm.'

93. Pursuant to 42 U.S.C. § 1982 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiffs are entitled to judgment as set forth below

WHEREFORE, Plaintiffs request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful and violate the ADA and NYSHRL;

b. A preliminary and permanent injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of compensatory damages for Defendants' breach of contract, and violations of 42 U.S.C. §§ 1981, 1982, the Americans with Disabilities Act, and the New York State Human Rights Law against Plaintiffs;

d. An award of punitive damages for Defendants' unlawful discriminatory practices;

e.  An award of prejudgment and postjudgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties; and

f.  Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 28(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

DATED: New York, New York
August 10, 2021

                                            IGBOKWE, PLLC d/b/a
Law Office of William Igbokwe
*Attorneys for Plaintiff*
28 Liberty Street, 6th Floor
New York, New York 10005
(347)467-4674
will@iwlaws.com
By:

  /s/ William Igbokwe
O. Williams Igbokwe, ESQ