UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LARRY BOGGS, et al.,

                Plaintiffs,

-against-

THE HOME DEPOT, INC., et al.

                Defendants.

**OPINION AND ORDER**

21-CV-06750 (PMH)

PHILIP M. HALPERN, United States District Judge:

Larry and Denise Boggs ("Plaintiffs") filed this action on August 10, 2021 against The Home Depot, Inc. ("Home Depot"), Home Depot U.S.A., Inc. ("Home Depot USA"), the Home Depot Foundation & Homer Fund (the "Foundation" and with Home Depot and Home Depot USA, the "corporate Defendants"), and John/Jane Does #1-10 ("John/Jane Does" and with the corporate Defendants, "Defendants"). Plaintiffs' Amended Complaint dated March 30, 2022 presses four claims for relief against Defendants: (i) breach of contract; (ii) violation of New York State Human Rights Law, N.Y. Exec. Law § 292, *et seq.* ("NYSHRL"); (iii) violation of Title 42 U.S.C. § 1981 ("§ 1981"); and (iv) violation of Title 42 U.S.C. § 1982 ("§ 1982"). (Doc. 18, "Am. Compl.").[1]

Defendants moved under Fed. R. Civ. P. 12(b)(6) on July 28, 2022, in accordance with a briefing schedule set by the Court, to dismiss Plaintiffs' Amended Complaint. (Doc. 28; Doc. 29, "Def. Br."; Doc. 30). Plaintiff opposed, (Doc. 32, "Opp. Br."), and the motion was fully submitted upon the filing of Defendants' reply memorandum of law (Doc. 33, "Reply").

---

[1] The Court notes that Plaintiffs filed their Amended Complaint a number of times because the filings were repeatedly rejected by the Clerk of Court. (*See* Doc. 18; Doc. 20; Doc. 21; Doc. 22; Doc. 24). Each of these documents appears identical. Because Plaintiffs refer to the document filed on March 30, 2022 (Doc. 18) as their operative complaint in their opposition brief to this motion (Opp. Br. at 1), and Defendants agree that is the operative pleading, the Court treats that filing as the operative pleading and disregards the filings at Docs. 20, 21, 22, and 24. Except where otherwise noted, pagination corresponds to that generated by ECF.

For the reasons set forth below, Defendants' motion is DENIED.

## BACKGROUND

The following facts are taken from the Amended Complaint. Plaintiffs are a married couple who own a home at 23 Marjorie Drive Monticello, NY 12701, which they purchased on December 13, 2013. (Am. Compl. ¶ 32). Each Plaintiff is a veteran of the United States Military, and each is severely and medically disabled from their service to this country. (*Id.* at 4). Plaintiffs are dependent on disability and veteran's benefits and live on limited income. (*Id.* ¶¶ 30-31). After medical setbacks from surgeries, Plaintiffs learned not only that their house needed renovations to accommodate their disabilities but that serious repairs were required. (*Id.* ¶ 33-34). Plaintiffs were unable to pay for these repairs and renovations on their limited income and throughout 2015 and 2016 pursued opportunities for grant funding through the Monticello Home Depot store. (*Id.* at 5-6).

Plaintiffs were eventually contacted by Action Towards Independence, Inc. ("ATI"), a non-profit organization that "promotes the independence, inclusion, participation, and personal choice of individuals with disabilities." (*Id.* ¶ 42). ATI was to administer a grant project through Home Depot which, *inter alia*, provided for $9,600 in funding and for "Team Depot" to repair and renovate Plaintiffs' home. (*Id.* at 6; Doc. 18-1, the "Grant").[2] The Grant stated that:

---

[2] "On a motion to dismiss, the Court may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which the plaintiff relied in bringing the suit." *Williams v. Lohard*, No. 20-CV-10571, 2022 WL 269164, at *1 (S.D.N.Y. Jan. 28, 2022) Thus, in addition to the allegations in the Complaint, the Court will consider the exhibits attached to it, including the Grant.

> In support of the charitable purposes for the [New Beginnings for the Boggs] project, Team Depot will replace damaged siding, replace and widen door jams, replace with functional doors, tile two (2) bathroom floors, remodel two (2) bathrooms to make handicap accessible, replace damaged base board heater. Volunteers will also hang blinds in the bedroom, sheet rock on the basement ceiling, insulate side porch for medical supplies, and replace deteriorating deck at the Boggs single-family home 23 Marjorie Drive Monticello, NY 1270.

Grant at 1. The Grant is signed by Courtney Smith, the manager of Team Depot. (Grant at 4). Plaintiffs allege that "Team Depot" is comprised of Home Depot USA and the John/Jane Does. (Am. Compl. ¶ 49). Work on Plaintiffs' home began "shortly after" the Grant was signed on October 16, 2017. (*Id.* at 6-7). All work for the project ceased in April 2018, despite the repairs and renovations remaining incomplete. (*Id.* at 8). The John/Jane Does informed Plaintiffs that white Hasidic Jewish residents of the town were returning for summer with work demands and that, therefore, the project on Plaintiffs' home could not be completed. (*Id.*). Plaintiffs' home was left in complete disrepair, in some respects worse than before the project commenced: permits were not obtained; a deck was built in violation of city code; and bathroom wiring was left as a fire hazard. (*Id.* at 9).

Plaintiffs attempted to get the project restarted and visited the Monticello Home Depot to inquire about it, yet they were once again told that the white Hasidic Jewish residents' work would be prioritized. (*Id.*). The work was never completed, Plaintiffs' home was left in derelict condition, and Plaintiffs eventually received two "Letters of Violation" from the Town of Thompson, threatening *per diem* fines of $250 and imprisonment if the house was not brought up to code. (*Id.* at 9-10).

This litigation followed.

**STANDARD OF REVIEW**

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

**ANALYSIS**

Plaintiffs press four claims for relief, two under federal law and two under state law. (*See generally*, Am. Compl.). Defendants argue that "[i]f the Court dismisses Plaintiff's federal claims,

4

the Court should likewise dismiss its state law and common law claims due to a lack of supplemental jurisdiction." (Def. Br. at 16). Because the Court finds that Plaintiffs' federal claims survive, it need not and does not address Defendants' argument with respect to the exercise of supplemental jurisdiction. The Court, therefore, addresses each of Plaintiff's claims, beginning with their federal claims for relief.

I. <u>Violation of § 1981</u>

Plaintiffs' third claim for relief is based on an alleged violation § 1981. (Am. Compl. at 12-13). Section 1981 provides that, *inter alia*, "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." Section 1981 "include[s] [a] private right of action arising from private acts of discrimination." *Kosher Ski Tours Inc. v. Okemo Ltd. Liab. Co.*, No. 20-CV-09815, 2021 WL 5326527, at *6 (S.D.N.Y. Nov. 16, 2021) (citing *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975)). To state such a claim "a plaintiff must allege sufficient facts to demonstrate (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute . . . . Moreover, a plaintiff must allege that but for race, it would not have suffered the loss of a legally protected right." *Id.* (internal quotations removed). "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).

5

"In order to survive a motion to dismiss . . . the events of the intentional and purposeful discrimination, as well as the racial animus constituting the motivating factor for the defendant's actions must be specifically ple[d] in the complaint." *Robledo v. Bond No. 9*, 965 F. Supp. 2d 470, 475 (S.D.N.Y. 2013) (internal quotation removed).

> Conclusory or naked allegations are insufficient; fact-specific allegations of a causal link between the defendant's actions and the plaintiff's race are required . . . It is not enough merely to assert that the defendant took adverse action against the plaintiff, and that the action was the product of racial animus. The complaint must allege specific facts supporting both the existence of the racial animus and the inference of a link between the adverse treatment and the racial animus.

*Id.* (internal quotations removed). However, [w]hen discriminatory intent is at issue, courts are cautious of summary adjudication." *Hicks v. IBM*, 44 F. Supp. 2d 593, 598 (S.D.N.Y. 1999). Ultimately, on a motion to dismiss, "the Court is required to accept Plaintiff's allegations in the Complaint as true . . . [if] the Court finds that a reasonable inference may be drawn that Defendants' conduct was motivated by a racial animus . . . [then] Plaintiffs have sufficiently set forth a violation of § 1981." *Robledo*, 965 F.Supp.2d. at 476.

Plaintiffs assert that "Defendants, their agents, and employees purposefully impaired Plaintiffs' rights under the [c]ontract solely because Plaintiffs are black and not white . . . [and] [a]s a result of Defendants' unlawful discriminatory practices, the Plaintiffs' home was left in serious dereliction." (Am. Compl. at 14). Specifically, Plaintiffs allege that, after stopping work on their home, the John/Jane Does "informed [Plaintiffs] that the Hasidic Jewish residents (who are of Caucasian descent) were returning to town for the summer, and due to [those residents'] work demands . . . Defendants would not be able to finish" Plaintiffs' house. (*Id.* at 8).

These allegations are sufficient at this stage to raise an inference that Defendants intentionally discriminated against Plaintiffs on the basis of their race and that such discrimination

6

interfered with Plaintiffs' ability to enforce a contract. The adverse action here is the stoppage of work on Plaintiff's house; the racial discrimination is the explicit favoritism shown to another racial group; and it is clearly alleged that the adverse action was motivated by the racial discrimination.

Defendants argue, however, that the Court ought to dismiss Plaintiffs' § 1981 claim for three reasons: (i) Plaintiffs did not have a right to enforce the grant made by Defendants for repairs of their house; (ii) the John/Jane Does' statement does not establish vicarious liability for Defendants; and (iii) the statement at issue is unrelated to race on its face. (Def. Br. at 13-15).

With respect to Defendants' first argument, the law is clear that "§ 1981 protects against the actions of third parties, as well as the actions of a directly contracting party." *Korova Milk Bar of White Plains, Inc. v. PRE Properties, LLC*, No. 11-CV-03327, 2013 WL 417406, at *12 (S.D.N.Y. Feb. 4, 2013). Here, as discussed *infra*, Plaintiffs are third-party beneficiaries to the grant contract which, *inter alia*, was titled "New Beginnings for the Boggs." As third-party beneficiaries, they were entitled to enforce the contract and, moreover, entitled to protection under § 1981 for any interference with that right based on racial discrimination.

Defendants' second argument also fails. Citing to a single case, Defendants argue that "district courts in this Circuit that have addressed vicarious liability for private entities under § 1981 seemingly require conduct perpetrated by a manager or supervisor who could fairly be said to be carrying out the will or policy of the defendant-employer." (Def. Br. at 14 (quoting *Clark v. City of New York*, No. 13-CV-00210, 2016 WL 11469535, at *7 (E.D.N.Y. July 22, 2016)). *Clark*, is readily distinguishable: it was decided on summary judgment with the benefit of discovery, and the court's ruling with respect to vicarious liability turned on the fact that the plaintiff had "submitted no evidence" that the discriminatory slur made by a desk clerk at a hotel could be

imputed to the defendant-employer. *Id.* at *7. Here, at the motion to dismiss stage, it is sufficient for Plaintiffs to allege that the John/Jane Does "were individual employees *and managers* of Home Depot U.S.A." (Am. Compl. at 7 (emphasis added)).³ To the extent Defendants' argument is that this allegation is insufficient because the John/Jane Does did not have supervisory authority and were only performing volunteer work, the Court is unable to make that determination without the benefit of discovery.

Defendants' final argument that the John/Jane Does' statement "referred to members of a particular religious group . . . as opposed to race" is, similarly, of no avail. (Def. Br. at 15). Plaintiffs specifically plead that the Hasidic Jewish residents "are of Caucasian descent." (Am. Compl. at 8). Discrimination on religious and racial grounds is not mutually exclusive. All inferences must be weighed in Plaintiffs' favor and, absent any indication to the contrary, the allegation that Defendants showed favoritism to a group of people "of Caucasian descent" is sufficient to state a claim of racial discrimination.

The branch of Defendants' motion seeking to dismiss Plaintiffs' claim for relief under § 1981 is, accordingly, denied.

II.  <u>Violation of § 1982</u>

Plaintiffs' fourth claim for relief is for a violation of 42 U.S.C. § 1982. Claims under §§ 1981 and 1982 are substantially similar and are often considered in conjunction with each other. *See, e.g. Kosher Ski Tours*, 2021 WL 5326257. Section 1982, however, provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to *inherit, purchase, lease, sell, hold, and convey real and personal property*." 42

---

³ Although this particular allegation refers to Home Depot USA but not Home Depot, Plaintiffs elsewhere allege that all Defendants engaged in discrimination. (*See, e.g.* Am. Compl. ¶ 83). Moreover, Defendants have not provided any basis for the Court to distinguish between Home Depot USA and Home Depot. Dismissal of either entity is thus inappropriate at this stage.

U.S.C. § 1982 (emphasis added). Defendants argue that the Amended Complaint fails to allege interference with one of the specific statutorily enumerated activities; and that, therefore, Plaintiffs' claim must fail. Courts have, however, repeatedly found that discriminatory interference with the *use* of property is actionable under § 1982. *See Olzman*, 495 F.2d 1333, at *1339 (finding interference with an invitee's right to use a pool at a club to be actionable and noting that "one of the 'great fundamental rights' sought to be preserved by the Civil Rights Act of 1866 was 'the right to go and come at pleasure . . . .'" (quoting *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 432 (1968)); *cf. Tower Properties LLC v. Vill. of Highland Falls*, No. 14-CV-04502, 2015 WL 4124499 (S.D.N.Y. July 7, 2015) (acknowledging "use" of property as actionable under § 1982 but only where plaintiffs have a recognizable interest in the property at issue).

Plaintiffs certainly have a recognizable property interest in the use of their own home. The facts set forth in the Amended Complaint, including that Plaintiffs' deck was left unstable and fire hazards were left in their bathroom, sufficiently allege interference with their use of their property. (*See* Am. Compl. at 9-10).

Plaintiffs, moreover, allege that incomplete repairs led the Town of Thompson to send them a "Letter of Violation" (Am. Compl., Ex. B), which threatened $250 *per diem* fines and possible imprisonment. (*See id.* at 10 ("As [Plaintiffs] are disabled wounded veterans, their home is their most important possession, and they were traumatized at the prospect of losing [it] or being criminally punished for the Defendants' offenses.") These allegations are sufficient to plausibly infer that Plaintiffs' right to "hold" their property free of fines, imprisonment, and trauma was inhibited.

The branch of Defendants' motion seeking to dismiss Plaintiffs' claim for relief under § 1982 is, accordingly, denied.

III.   Breach of Contract

Plaintiff's first claim for relief is for breach of contract. The contract at issue is "to be made under, and in all respects, interpreted under and governed by the laws of the State of Georgia." (Grant at 4). Such "choice-of-law provisions [will be enforced] unless the application would contravene public policy." *Murray v. ILG Techs., LLC*, 378 F. Supp. 3d 1227, 1236 (S.D. Ga. 2019). Defendants, therefore, assert that Georgia law applies to this claim for relief. (*See* Def. Br. at 6). Plaintiffs contest that Georgia law applies and instead cite to New York case law. (*See* Opp. Br. at 3-4). Neither party provides analysis attempting to resolve this choice of law issue in briefing.

Under Georgia conflicts of law rules, the Court has determined that, for purposes of this motion, there is no appreciable difference between contract law in New York and in Georgia. *Compare Danjor v. Corp. Constr., Inc.*, 613 S.E.2d 218, 220 (Ga. Ct. App. 2005) ("[I]n order for a third party to have standing to enforce a contract [in Georgia] it must clearly appear from the contract that it was intended for his benefit") *with Subaru Distr. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005) ("Under New York law in order to recover as a third-party beneficiary of a contract, a claimant must establish that the parties to the contract intended to confer a benefit on the third party."). The parties do not assert a conflict between New York and Georgia laws with respect to breach of contract and, indeed; admit that "[i]n Georgia, the standard to assert a third-party beneficiary breach of contract claim is the same [as in New York]." (Opp. Br. at 4 (citing *Danjor*, 613 S.E.2d at 220)). Therefore, further conflicts of law analysis under Georgia law is unnecessary. *See Parm v. Nat'l Bank of California, N.A.*, No. 14-CV-00320, 2015 WL 11605748, at *12 (N.D. Ga. May 20, 2015) ("Before beginning a choice of law analysis, a court should determine whether a conflict of laws truly exists.") The elements for a breach of contract claim in

Georgia and in New York are similar and are undisputed: "(1) breach and . . . (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Norton v. Budget Rent A Car Sys., Inc.*, 705 S.E.2d 305, 306 (Ga. Ct. App. 2010); *cf. Cal. Pub. Empl. Ret. Sys. v. Shearman & Sterling*, 95 N.Y.2d 427 (N.Y. 2000).

Defendants raise three arguments with respect to Plaintiff's breach of contract claim: (i) Home Depot and Home Depot USA are not parties to the agreement; (ii) Plaintiffs are not third-party beneficiaries of the contract with respect to the Foundation; and (iii) the Foundation fulfilled its obligations under the contract by making a grant to ATI. (*See generally,* Def. Br.). The Court will address these arguments *seriatim*.

A. Home Depot and Home Depot USA are Plausibly Alleged to Be Parties

Defendants argue that the contract "clearly and unambiguously provides that neither the Home Depot, Inc. nor the Home Depot U.S.A. are parties to the agreement" and that "a breach of contract claim may only be maintained against a party to the contract" (Reply at 3 (quoting *AlertPoint, LLC v. Olds*, No. 18-CV-03879, 2019 WL 12520132, at *2 (N.D. Ga. July 23, 2019)). Defendants argue moreover that because the contract is "unambiguous," parol evidence about Plaintiffs' grant application process may not be introduced. (Reply at 3-4).

The first step in the Court's analysis is to determine whether the contract is ambiguous on its face with respect to whether Home Depot, Inc. and Home Depot U.S.A. are parties. Contrary to Defendants' representation, the Grant nowhere "provides" that these two entities are not parties to the contract. In fact, the Grant does not reference those entities at all. The Amended Complaint, on the other hand, alleges that "Team Depot" refers to Home Depot USA and was comprised of the John/Jane Does. The first sentence of the Grant reads: "[i]n support of the charitable purposes for the above referenced project, *Team Depot* will replace [various furnishings in and parts of] the

11

Boggs single-family home." (Grant at 2 (emphasis added)). The Grant is signed by Courtney Smith whose title is "Manager, Team Depot." (*Id.* at 4). Team Depot is not defined in the Grant and Defendants provide no alternative explanation for who or what that entity is. The nature of "Team Depot," the signatory to the contract and entity performing thereunder, is therefore ambiguous on the face of the contract.

It is entirely plausible, even without considering parol evidence, that Home Depot, Home Depot USA, and/or agents and employees thereof comprised Team Depot. The logical inference taken from the name "Team *Depot*" in this context is that the team is at the very least affiliated with Home *Depot*. Section twelve of the Grant, moreover, states that "[n]o home repair or project shall include services or efforts that directly impact current Home Depot Associates or an immediate family member of that Associate in a way that provides an increase in value . . . ." (Grant at 4). Preventing conflicts of interests and personal gain for agents of Home Depot would only be necessary if that entity were affiliated with Team Depot, and therefore, the contract. Finally, although "[t]he existence of a parent/subsidiary relationship does not on its own establish an agency relationship under Georgia law," *Aria Dental Grp., LLC v. Farmers Ins. Exch.*, 528 F. Supp. 3d 1359, 1364 (M.D. Ga. 2021), the corporate structure of Home Depot is likely relevant to the nature of the contractual relationship here. Without this critical information, the Court is unwilling to dismiss the Amended Complaint.

Moreover, the Court *is* permitted to consider parol evidence to interpret the ambiguous term "Team Depot." *McKinley v. Coliseum Health Grp.*, LLC, 708 S.E.2d 682, 684 (Ga. Ct. App. 2011) ("parol evidence is admissible to explain an ambiguity in a written contract."). Plaintiffs allege in the Amended Complaint that they applied for the Grant at the Monticello Home Depot store, that all of the building materials for the project were purchased at that store, that the

John/Jane Does who performed work on the project were employees of Home Depot, and that they communicated interchangeably with the corporate Defendants throughout the project. (*See* Opp. Br. at 5). These allegations, taken as true at the motion to dismiss stage, are sufficient to raise a plausible inference that Home Depot and Home Depot USA were parties to the Grant as members of Team Depot.

### B. Plaintiffs are Third-Party Beneficiaries

Defendants next argue that "Plaintiffs have failed to sufficiently plead that they are intended third-party beneficiaries [because] [u]nder Georgia law . . . 'it must appear clearly on the face of the contract that it was intended for the benefit of the third party.'" (Def. Br. at 8 (quoting *Patel v. Diplomat 1419VA Hotels, LLC*, No. 13-CV-01588, 2014 WL 11462722, at *5 (N.D. Ga. Feb. 4, 2014))). Defendants acknowledge that the Amended Complaint contains three distinct allegations relating to Plaintiffs' third-party beneficiary status:

> (i) the grant provided for under the Grant Agreement was titled "New Beginnings for the Boggs," (ii) the grant money that the Home Depot Foundation granted to ATI was to be used to renovate the Boggs home by "Team Depot," and (iii) the Defendants intended Plaintiffs to be the third-party beneficiaries of the Grant Agreement.

(*Id.* (citing Am. Compl. ¶¶ 46, 47, 88-89)). Despite acknowledging those allegations, Defendants attempt to discount them by stating that "they do not identify a *specific provision* of the Grant Agreement that the Home Depot Foundation is alleged to have breached." (*Id.* (emphasis in original)). The specific provision of the Grant showing that it is intended for the benefit of the Plaintiffs is the first paragraph, which identifies the "charitable purposes for the [New Beginnings for the Boggs] project" as the renovation of "the Boggs single-family home." (Grant at 1). Plaintiffs are, accordingly, entitled to sue as third-party beneficiaries.

### C. Defendants' Obligations Under the Contract Extended Beyond Funding

Defendants' final argument challenging the breach of contract claim is that "the Home Depot Foundation's obligation was to issue grant funds to ATI so Team Depot volunteers could make repairs to Plaintiffs['] home" and that this obligation was fulfilled.[4] (Opp. Br. at 9). This argument is belied by the words of the contract, which state that "*Team Depot* will replace damaged siding, replace and widen door jams, replace with functional doors, tile 2 bathroom floors, remodel 2 bathrooms . . . [etc.]" (Grant at 1 (emphasis added)). This language unambiguously places an obligation on Team Depot to renovate Plaintiffs' house. Who or what constitutes Team Depot, as discussed *supra*, is unclear on the face of the contract. What is clear is that Team Depot has some affiliation with Defendants, had obligations under the contract, and shirked those obligations. What is also clear is that the Foundation's payment of grant money did not satisfy those obligations, especially where Plaintiffs' home remained in disrepair until at least the filing of the Amended Complaint on March 30, 2022, nearly four years after the alleged breach, and potentially to this day. (*See* Am. Compl.).

The branch of Defendants' motion seeking to dismiss Plaintiffs' breach of contract claim for relief is, accordingly, denied.

IV.  NYSHRL

Plaintiffs' second claim for relief alleges a violation of the NYSHRL, which prohibits discrimination on the basis of a disability at "any place of public accommodation." N.Y. Exec.

---

[4] This admission by Defendants further supports Plaintiffs' third-party beneficiary status.

Law § 296(2)(a).[5] Defendants argue that because Plaintiffs allege that the discrimination occurred at their own home and because "a private residence is not a 'place of public accommodation,'" the NYSHRL claim must fail. (Def. Br. at 11 (quoting *Reid v. Zackenbaum*, No. 05-CV-01569, 2005 WL 1993394, at *5 (E.D.N.Y. Aug. 17, 2005) ("A residential facility, such as an apartment, is not a public accommodation"))).[6] Defendants' argument misses the mark in that *Reid* and cases like it—finding the ADA and NYSHRL inapplicable to private residences—involve discrimination *by private residents at their private residences*. In contrast, here, a place of public accommodation is allegedly discriminating at a private residence against Plaintiffs by refusing services that it otherwise offers to the public. To illustrate the difference: if a homeowner refuses to allow their neighbor into their own home based on their neighbor's disability, NYSHRL does not apply; if, on the other hand, a delivery company refuses to deliver a package to a customer's house because of their disability, NYSHRL does apply. *See Sullivan v. BDG Media, Inc.*, 146 N.Y.S.3d 395, 401 (N.Y. Sup. Ct. 2021) ("public accommodations need not necessarily be supplied at fixed places, and establishments may discriminate by denying goods or services without denying individuals access to any particular place—as in the case of mail order services") (internal quotations removed). The New York Court of Appeals has long recognized this distinction, holding in a seminal NYSHRL case that:

> The statute also applies to "establishments dealing with goods or services of any kind." Analytically, such establishments may

---

[5] Such claims are commonly pled and adjudicated in conjunction with claims made under the Americans with Disabilities Act ("ADA"). *See, e.g Harty v. Spring Valley Marketplace LLC*, No. 15-CV-08190, 2017 WL 108062 (S.D.N.Y. Jan. 9, 2017). Plaintiffs, however, dropped their ADA claim in the Amended Complaint. (*Compare* Doc. 1 *with* Am. Compl.).

[6] The full quote from this parenthetical reads: "A residential facility, such as an apartment, is not a public accommodation *under the ADA*." *Reid*, 2005 WL 1993394, at *5. Although ADA and NYSHRL claims are—in broad strokes—governed by similar legal standards, *see Mendez v. Apple Inc.*, No. 18-CV-07550, 2019 WL 2611168, at *4 (S.D.N.Y. Mar. 28, 2019), ADA case law is persuasive here rather than binding.

15

> discriminate by denying goods and services without denying individuals access to any particular place, e.g., home delivery service *or services performed in the customer's home* and mail order services . . . The place of the public accommodation need not be a fixed location, it is the place where petitioners do what they do."

*U.S. Power Squadrons v. State Hum. Rts. Appeal Bd.*, 59 N.Y.2d 401, 411 (N.Y. 1983) (emphasis added) (quoting NYSHRL). Plaintiffs' allegation that Defendants denied them services otherwise offered to the public on the basis of their disabilities is indeed actionable under NYSHRL, regardless of the facts that they were permitted access to a physical Home Depot store and that the alleged discrimination occurred against them in their private residence.

The branch of Defendants' motion seeking to dismiss Plaintiffs' claim for relief under NYSHRL is, accordingly, denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED.

Plaintiffs' four claims for relief will proceed to discovery. Defendants are directed to file an Answer to the Amended Complaint and a Rule 7.1 Corporate Disclosure Statement within fourteen (14) days of this Opinion and Order. The Court is setting March 9, 2023 at 10:00 a.m. as the date and time for the Initial Pretrial Conference in this matter, to be held by telephone. At the time of the conference, all parties shall call: (888) 398-2342; access code: 3456831.

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 28.

**SO ORDERED:**

Dated:   White Plains, New York
         February 6, 2023

_____
PHILIP M. HALPERN

_____
United States District Judge